GENERAL MOTORS CORPORATION and General Motors Overseas Distributors Corporation, Plaintiffs,

and

Car and Truck Renting and Leasing Association of Hawaii, Intervenor Plaintiff,

v.

John A. BURNS, as Governor of the State of Hawaii, Bertram T. Kanbara, as Attorney General of the State of Hawaii, and the Motor Vehicle Industry Licensing Board, an agency of the State of Hawaii, Defendants,

and

National Automobile Dealers Association and Hawaii Automobile Dealers Association, Intervenor Defendants.

Civ. No. 70-3118.

United States District Court,
D. Hawaii.

Aug. 17, 1970.

Martin Anderson, Honolulu, Hawaii, Jenks, Kidwell, Goodsill & Anderson, Honolulu, Hawaii, of counsel, Morris M. Doyle, Burnham Enersen, Craig, McAttee, Terry J. Houlihan, San Francisco, Cal., McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., of counsel, Ross L. Malone, Otis M. Smith, Detroit, Mich., for plaintiffs.

J. Russell Cades, William M. Swope, Harvey E. Henderson, Honolulu, Hawaii,

Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, of counsel, Bernard G. Segal, Jerome J. Shestack, Arthur H. Kahn, Philadelphia, Pa., Joseph A. Tate, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel, for intervenor-plaintiff.

Bertram T. Kanbara, Atty. Gen., State of Hawaii, Morton King, Senior Deputy Atty., Jeffrey N. Watanabe, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

Clinton K. L. Ching, Honolulu, Hawaii, Lewis, Saunders & Key, Honolulu, Hawaii, of counsel, Jerry S. Cohen, Harold E. Kohn, Washington, D. C., for intervenor-defendant National Automobile Dealers Association.

Vernon F. L. Char, Honolulu, Hawaii, Damon, Shigekane & Char, Honolulu, Hawaii, of counsel, Maxwell M. Blecher, Peter J. Donnici, San Francisco, Cal., Law Offices of Joseph L. Alioto, San Francisco, Cal., of counsel, for intervenor-defendant Hawaii Automobile Dealers Association.

## DECISION ON NECESSITY FOR CONVENING A THREE-JUDGE COURT

PENCE, Chief Judge.

In January 1970, General Motors and its overseas distributors subsidiary brought this action seeking to enjoin the State of Hawaii from enforcing the Motor Vehicle Industry Licensing Act (Hawaii Rev.Stat. 437–1 through 42) as amended by Act No. 263, Fifth Legislature of Hawaii,[1] on the ground that its provisions conflict with the Constitution of the United States, and therefore requested the convening of a three-judge court under 28 U.S.C. §§ 2281 and 2284. Plaintiffs also requested a declaratory judgment upon the statute. Thereafter the court allowed intervention, as parties defendant by the Hawaii Automobile Dealers Association and the National Automobile Dealers Association, and as a party plaintiff by the Car and Truck Renting and Leasing Association of Hawaii.

Just as strongly as the plaintiffs insisted that the three-judge court was mandated to resolve their complaints, so did the defendants urge that the complaint should be dismissed or, in the alternative, that the problems presented could properly be heard only by a single judge. This court ordered all parties to submit briefs upon the threshold question of whether or not the convening of a three-judge court was mandated by the complaint, and if not, what action should be taken by the single judge. Magnificent briefs were thereafter supplied this court, covering the multitude of problems engendered by the legislation attacked. On July 29, 1970, these questions were argued in depth by most able counsel.

Plaintiffs' position throughout, in effect, was that inasmuch as their complaint alleged the unconstitutionality of the statute, irreparable injury and prayed for injunctive relief, therefore, ipso facto, this court could do not less but convene a three-judge court. As Professor Wright comments:[2] " 'this deceptively simple statute' * * * abounds with slippery distinctions." As this court sees it, the lesson to be drawn from the multitude of Supreme Court opinions touching upon the subject[3] is

---

1. Several sections of the Act were amended by H.B. No. 2112–70, signed into law by Governor Burns on June 13, 1970. The parties have briefed this court on the effect of these amendments upon the underlying complaint.

2. Law of Federal Courts, 2nd Ed., p. 190.

3. *E. g.*, Gunn v. University Committee, June 29, 1970, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684; Goldstein v. Cox, 1970, 396 U.S. 471, 90 S.Ct. 671, 24 L.Ed.2d 663; Kessler v. Dept. of Public Safety, 1962, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641; A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Query v. United States, 1942, 316 U.S. 486; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed.2d 152.

that a three-judge court is not mandated by simple "notice pleading" and use of magic words such as are ofttimes held by appellate courts to be sufficient under the Federal Rules of Civil Procedure. It is now axiomatic that the constitutional question involved must be substantial and, presupposing the unconstitutionality of the challenged statute, the necessity for equitable relief must be clearly apparent. Something more than just a formal allegation [4] of a basis for equitable relief is required.

This court's initial analysis of the complaint with the challenged provisions of the statute in question did not immediately satisfy this court that the plaintiffs were entitled to the relief sought even though "magic words" appear throughout the complaint. Even after briefing and argument, this court was not yet completely convinced that it should request the convening of a three-judge court. It was only after further and intensive study that the court reached its decision.

The "Legislative findings and declarations" in the first paragraph of the Act fully delineated the reason for the Act and its underlying purposes,[5] and attempted to give State recognition of and relief to "the unusual position in which automobile dealers find themselves * * *. Because they are normally locked in, with no other source of income and no easy opportunity to convert to other lines, * * * [many manufacturers have been] able to take advantage of * * * dealers by making unjustifiable demands * * * under threat of cancellation of the dealership." Fornaris v. Ridge Tool Co., 1st Cir., March 17, 1970, 423 F.2d 563.

Defendants do not deny plaintiffs' allegations that many of the sections had attributes of vagueness. It is a long, involved and prolix act, attempting to regulate all aspects of motor vehicle distribution and sales in Hawaii involving manufacturers, distributors, dealers and salesmen. Violations of the Act are subject to penal sanctions by way of fines from $50 to $500 upon conviction. Although plaintiffs attacked a multitude of sections and urged that the entire Act be declared unconstitutional, the Act itself has a severability clause: "SEC. 437–41, Section 2. If any provision * * * of this Act * * * is held * * * unconstitutional, the remainder * * * shall not be affected thereby."

The sections of the Act which, *for the purpose of this threshold decision,* appeared most vulnerable to plaintiffs' attack and supporting their request for a three-judge court, were 437–28(b) (18) (D), 437–28(b) (22) (E) and 437–28 (b) (22) (F).

Sections 437–28(a) and (b) permit the Board (Motor Vehicle Industry License Board), upon complaint, or its own motion, investigation and hearing, to suspend or revoke any license issued under the law to a dealer or manufacturer, etc., for a multitude of acts, including (b) (14): "[After a licensee] has entered or attempted to enter or proposes to enter into any contract or agreement contrary to this chapter or any rule or regulation adopted thereunder."

437–28(b) (18) (D) permits the suspension or revocation of a dealer's license if it "has proposed to sell new motor vehicles" of a "manufacturer * * * or distributor * * * who is *charged* with cancelling or failing to renew a franchise agreement with a dealer unfairly * * * [until the] complaint has * * * been finally disposed of by the board and by the highest * * * appellate court if appeal has been taken. * * * *" (Emphasis added.) Plaintiffs urge that this could preclude the sale of General Motors' cars by any dealer anywhere in the State of Hawaii from the time any charge was lodged

---

4. Inferentially approved in *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 1962, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed. 2d 794.

5. *Cf.* 15 U.S.C. §§ 1221–1225, as well as *General Motors Corporation v. Blevins,* D.C.Colo.1956, 144 F.Supp. 381, 399.

against the plaintiffs that they had unfairly, etc., canceled or failed to renew a franchise agreement with any other dealer in the State. Plaintiffs maintain this section violates the prior hearing requirements of Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, and Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 339, 89 S.Ct. 1820, 23 L.Ed.2d 349, and this contravenes due process. Plaintiffs do not allege that any action under this section is even imminent.

Section 437–28(b) (22) (E) allows like suspension or revocation of a manufacturer's or distributor's license if it "has sold any new motor vehicle [in Hawaii] at a lower actual price than the actual price charged to a dealer" for the same car. Plaintiffs and plaintiff-intervenor urge that this section precludes sales at special fleet discounts in Hawaii. All plaintiffs agree that this contravenes the Due Process, Commerce and Equal Protection clauses.

Section 437–28(b) (22) (F) provides for similar suspension or revocation if a manufacturer or distributor "has discriminated against their franchise dealers [in Hawaii] by not providing the equivalent value of * * * transportation * * * [for] each new motor vehicle for the purchase price as provided to their franchise dealers in other states." Plaintiffs translate these words as meaning that the ocean freight costs of motor vehicles sold in Hawaii must be borne by the manufacturer and may not be charged to the dealer or purchaser in Hawaii. This "translation" is not challenged by the defendants. Plaintiffs claim this also denies them Due Process and Equal Protection as well as violates the Commerce Clause.

Defendants maintain that the act of the State, in preventing the assessment of ocean freight charges against Hawaii dealers, is but a reasonable exercise by the Legislature of its police power and authority to regulate the prices of commodities which are important to public interest. Defendants equate the regulation of the sale prices of motor vehicles with the ever-thorny problem of regula-

tion of milk prices, as illustrated by Nebbia v. New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. Without deciding whether the sale price of motor vehicles and the sale price of milk can be so equated, it would appear to this court that the statement of the Supreme Court in *Nebbia*, p. 517, 54 S.Ct. p. 507: "The fluid milk industry is affected by factors of instability peculiar to itself which call for special methods of control", does not permit this court at this time to state flatly that *Nebbia* validates price-fixing of automobiles by the State, by this or any other means.

Section 437–28(d) permits the Board "when it is deemed urgent * * * for the proper protection of the public that a license be * * * summarily suspended pending a hearing of any charge against the licensee, the order of suspension shall be served upon the licensee at the same time as the notice of hearing on the charge. Any attempt of the licensee to continue * * * business * * * while his license is so suspended shall of itself be sufficient to warrant a permanent revocation of his license and shall also subject him to all [other] penalties prescribed" in the Act. Plaintiffs urge that permitting emergency suspension of a license pending outcome of a hearing denies them Due Process, Equal Protection of the law, and impairs the obligations of their contracts with the dealers in violation of Article I, Section 10, of the Constitution.

While there are situations where administrative action has been taken against a party on a temporary basis prior to any hearing, those cases involve areas of unusual sensitivity in the business world, e. g., Fahey v. Mallonee, 1947, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, involving the credit of a finance institution; Ewing v. Mytinger & Casselberry, Inc., 1950, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088, involving seizure under the Food and Drug Act where public health, of course, was involved; FPC v. Tennessee Gas Co., 1962, 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199, involving a regulated industry. Similarly, Home Bldg. & L. Assn. v. Blais-

dell, 1934, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, indicates that under very unusual circumstances (*e. g.*, the depression of the 1930's) a state may temporarily suspend contract rights (there involving home ownership) in order to protect the financial well-being of its citizens.

This court is not prepared *at this time* to rule upon whether the motor vehicle distribution system in Hawaii is within the "charmed circle" illustrated by the above cases, so that summary and immediate suspension could be constitutionally justified under even "urgent" conditions.

■■ It is manifest from the above analysis of but a *few* of the many sections of the Act attacked by the plaintiffs, that substantial constitutional questions have been raised. No matter how substantial may be those questions, however, unless it clearly appears to the court that the plaintiffs' request for equitable relief is justified, they are still not entitled to a hearing before a three-judge court.[6] If, however, in its analysis of the challenged portions of the Act this court finds that even any one of the Act's provisions so challenged would appear to justify granting the equitable relief requested, then the plaintiffs' complaint must be heard by a three-judge court.

Vagueness of a statute alone, of course, will not *per se* render an act unconstitutional nor entitle the plaintiffs to equitable relief from sanctions therein. Vagueness, if it exists, can normally best be removed by state courts, which, of course, are in a better position to determine the meaning of any of its state's legislation.

■ Plaintiffs here do not complain that they have been or are presently threatened with any of the Act's sanctions for any alleged violations of the Act.[7] As a matter of fact, it appeared during argument that the State proposes to do nothing to implement the Act until the instant complaint has been resolved. This unilateral statement of position on the part of the State, however, does not render moot the question of whether plaintiffs should be entitled to equitable relief and a three-judge court.

■ The court recognizes that shipping, delivery and sales of the plaintiffs' motor vehicles occur almost daily. The Act itself is now on the statute books and capable of instant implementation in any and all of its facets. Every time a car or a truck is shipped to Hawaii, an ocean freight charge is made by the carrier. If that charge is to be absorbed by a plaintiff under the alleged coercive effect of (D), *supra*, then that plaintiff is going to be out of pocket some $200 to $500 on each and every vehicle—dollars which it will never be able to recover from either the State of Hawaii, the Board, the dealer, or the Hawaiian buyer. If a plaintiff does not absorb that freight charge, then it would appear to be violating the Act and would thus be faced with a possible fine of $50 to $500 for each vehicle shipped in. This, too, could never be recovered. Thus, in either event, plaintiff would suffer substantial, irreparable loss.[8]

So caught in the current between Scylla and Charybdis, it would clearly appear that plaintiffs plea for equitable relief may have merit. That being so, and the court so finds, then plaintiffs are entitled to have their complaint considered by a three-judge court.

This court will forthwith request the Chief Judge of the Circuit that one be convened.

6. See cases cited, note 3, *supra*.

7. *Cf.* Dombrowski v. Pfister, 1965, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163–165, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, *supra*, n. 3.

8. *Cf.* Toomer v. Witsell, 1948, 334 U.S. 385, 391–392, 68 S.Ct. 1156, 92 L.Ed. 1460; Spielman Motor Co. v. Dodge, 1935, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322.